## William Twick, Plaintiff in Error, v. Alexander Peterson et al., Defendants in Error.

### Gen. No. 14,664.

PRINCIPAL AND AGENT—*when authority to collect established. Held,* under the evidence, that the authority of an attorney to collect a balance remaining due upon a note secured by a trust deed and to receipt for the same was established.

Foreclosure. Error to the Circuit Court of Cook county; the HON. RICHARD S. ' UTHILL, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed May 20, 1912.

ALBERT W. MAY, for plaintiff in error.

MORTON G. SMITH and LYMAN, LYMAN & O'CONNOR, for defendants in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

It is not necessary to notice the technical defenses urged by the defendants to the consideration of this writ of error. We shall dispose of it on its merits.

The bill of complaint in the cause was filed in the Circuit Court July 7, 1903. Its purpose was the foreclosure of a trust deed securing a note for $1500 and interest coupons dated March 8, 1893, made by Joseph W. and Louise Heitman, and payable three years from date, said to belong to Twick, the complainant, who is plaintiff in error here. The trust deed in question conveyed to one U. P. Smith, as trustee, certain real estate in Cook County, and was of even date with the note secured. It was duly recorded.

The note was to the order of the makers and by them endorsed in blank. When first made one Edward W. Cullen became the legal holder of it. Cullen was a lawyer, who apparently made the loan for which the note was executed, and sold the note to the complainant Twick, or negotiated the loan for Twick and obtained the money from Twick to pay over to the Heitmans. Twick insists upon the former theory, and it may be accepted as the most favorable to his contentions. But it is plain from the evidence that Twick invested money constantly through Cullen and that Cullen acted both as an attorney and mortgage broker for him; that in a great number of mortgage notes and accompanying coupons owned by Twick, the place of payment was made, as it was in the notes in question, the office of Cullen. The note and coupons in question here were bought or so delivered to Twick a few days after their date. In July of the same year—1893—Alexander Peterson, the defendant in error, bought the property covered by the trust deed from the Heitmans, who made the note, paying for it $500 in cash and assuming the incumbrance of $1500 described, and a further and subsequent smaller one.

Shortly after the purchase Peterson paid the principal note of the subsequent or second incumbrance, and

from time to time paid the coupon notes evidencing the interest on the $1500 Twick indebtedness at Cullen's office. On March 7, 1896, the original loan being about to become due, Peterson negotiated an extension agreement with Cullen, receiving a written document evidencing it, which purported to extend for a period of three years the principal note in question. This was signed "William Twick by E. W. Cullen, his atty." All the dealings of Peterson concerning the incumbrance were with Cullen.

It appears in the evidence that Twick told Cullen that he could extend the time for paying the principal as long as the interest was paid punctually.

From the evidence also it appears that by March 8, 1899, Peterson, with Cullen's assent, had paid to him various sums of money on account of the principal of the note, and on that date the principal note was endorsed by Cullen, to whom it had been, temporarily at least, entrusted by Twick:

"March 8, 1899, Received on the within note five hundred dollars. Balance due $1,000. Edward W. Cullen, Trustee."

Twick acknowledges receiving this money from Cullen.

It is impossible to tell from the record when the payments were made on the principal, and the exhibits, which might have thrown some light on testimony which is obscure, were left out of the record—a fact which by itself would justify the affirmance of the decree, were it not for the fact that a stipulation is filed with us, signed by the counsel for the defendant, that no advantage is to be taken of their absence—a very unsatisfactory arrangement to us. But it plainly enough appears that by April 9, 1900, when a payment of $100 was made by Peterson to Cullen, there had been, including said payment, $600 more paid, and on

that date Cullen gave to Peterson a receipt which recited that there was then left due only $400.

On July 24, 1900, Peterson paid Cullen on the note in question, for principal and interest, the sum of $413, and received from Cullen the following receipt:

"Chicago, Ill., July 24, 1900.

Received of Alex. Peterson $413.00 in full settlement of balance of a Trust Deed and note dated March 8th, 1893, given by Joseph W. Heitman and wife on property known as Number 217 North Albany avenue, Chicago, and I release and discharge all claims whatsoever I now hold against the said Alex. Peterson personally and also against the said property known as 217 Albany Avenue, Chicago, Ill."

When Peterson paid this last money he says he "called for all the papers" and Cullen wrapped up some papers, which he took from his safe, in a package or bundle and said, "Here is all that we hold against you and that property."

Peterson testifies he thought it included the note. As a matter of fact it contained only an abstract, insurance policy and a receipt. On the same day, however, the Trustee, Smith, executed a release of the trust deed mortgage in question. It was recorded (evidently by Cullen) on the next day and was sent by Cullen to Peterson on September 19, 1900. Twick testifies that he never received from Cullen this last $513, but admits that he did receive an additional $500 from Cullen after the payment of the first $500 above described; and the note bears the unsigned endorsement: "Rec'd on within note $500 March 8, 1901. Interest paid to date."

Twick contends, however, that he has been in possession of the note since its purchase except on the two occasions on which these endorsements were made, and that he has never been paid on the principal more than $1,000, while the interest was paid only to March 8, 1902.

It is a fair inference from the evidence that Cullen treated Peterson and Peterson treated Cullen as though Cullen was the authorized agent of the owner of the note, but that Cullen paid over to Twick only part of the money he received, not at the times that he received it, but afterwards, and by paying only $500 of the last $1013 received by him and that in March, 1901, and by paying the interest up to March 8, 1902, (although Peterson had completed his payments on the principal and received a release in the summer of 1900), deceived his client and principal, Twick.

Cullen absconded in February, 1903, leaving Chicago and his obligations here for parts unknown.

In April, 1903, Cullen's brother-in-law, Mr. Touhy, called on Peterson and told him, according to Touhy's testimony, that he represented Mr. Twick, who had a claim of $500 and interest on the note and security in question. He testified that he did not then have the note in his possession, but that it was afterwards brought to his office by Twick, and that in his office he had another and later interview with Peterson. Peterson and his wife and daughter say that Touhy had the note at the interview at Peterson's home, and said he had found it among Cullen's papers; and Mr. Esping, Mr. Peterson's employer, who went with him to Touhy's office later, testifies that Touhy said the same thing there. These statements as to the way in which the papers came into Mr. Touhy's possession are denied by Touhy and Twick, and are, in any event, of course, not evidence of the fact nor material against Mr. Twick.

But we think that the following conclusions, by omissions slightly modified from the statement of them in the report of the master to whom this case was referred, are warranted by the evidence:

"Peterson had dealt with Cullen as Twick's authorized agent, authorized to receive the principal as well as the interest on the said note. Two-thirds of the

principal of said note had been paid in the course of years, and as the evidence shows, had been received by Twick, * * * so that when the final payment made up the remaining balance Peterson could not but believe that Cullen was entitled to receive that money on account of his principal Twick. * * * In considering the evidence which shows the relations between Cullen and Twick, and bearing in mind the fact that on two occasions Cullen's authority to receive payments had been sanctioned by the receipt of the principal by Twick, * * * the defendant Peterson seems to have been fully justified in assuming that Cullen had authority to receive the payments; and inasmuch as it was the conduct of Twick which enabled Cullen to impose upon Peterson, Twick must suffer, though both parties are innocent.''

In conformity with the views thus expressed the Master recommended the dismissal of the bill for want of equity. The Circuit Court confirmed the master's report and dismissed the bill, and we affirm its decree.

*Affirmed.*